IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ROBERT L. TRUCKSESS           :        CIVIL ACTION
                              :
          v.                  :
                              :
THOMPSON AUTOMOTIVE GROUP, INC. :
d/b/a THOMPSON BMW            :        NO. 10-4313

MEMORANDUM

Bartle, J.                                    December 14, 2011

          Following a four-day jury trial, the court entered

judgment in favor of the plaintiff, Robert L. Trucksess, and

against his former employer, Thompson Automotive Group, Inc.

d/b/a Thompson BMW ("Thompson"), in the amount of $62,849 under

the Americans with Disabilities Act ("ADA"), 42 U.S.C.

§ 12112(a).  The jury awarded Trucksess compensatory damages in

the amount of $32,849 and punitive damages of $30,000.  Now

pending before the court is the motion of Trucksess, pursuant to

42 U.S.C. § 12205, for attorneys' fees and costs in the amount of

$133,775.95.

                              I.

          Thompson terminated Trucksess from his position as a

valet driver at its BMW automobile dealership in March 2009.

This termination came after two incidents in which Trucksess, who

has Type I diabetes, experienced low-blood sugar levels during

February 2009.  The first such incident occurred shortly after

Trucksess was involved in a minor traffic accident while driving

a Thompson automobile as part of his regular duties.  The second

incident occurred when Trucksess was at the Thompson BMW dealership, but on a day he was not working.

Trucksess retained Attorneys Robert Slota and Kevin Cornish of the law firm Hamburg, Rubin, Mullin, Maxwell & Lupin, P.C. ("HRMML")to represent him.  In August 2009, Trucksess filed complaints with the Pennsylvania Human Relations Commission ("PHRC") and the federal Equal Employment Opportunity Commission ("EEOC").  After Trucksess and Thompson participated in an unsuccessful private mediation, Trucksess obtained a right-to-sue letter from EEOC and filed suit in August 2010.  The complaint in this court alleged claims under the ADA and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et seq.

During discovery, Trucksess brought a motion to compel the deposition testimony of Thompson's corporate president, John Thompson.  Mr. Thompson was not listed by the defendant as a potential witness, and Trucksess desired to take his deposition based on its assumption that he would have knowledge of the company's personnel policies and procedures.  Nothing in the complaint suggested Mr. Thompson had personal knowledge of the facts of this case.  The court denied the motion to compel without prejudice.

Trucksess also filed a motion to compel Thompson to produce certain handwritten notes taken by Jennifer May, Thompson's human resources director.  Thompson had identified May's notes in its initial disclosures as "likely to bear

-2-

significantly" on its claims or defenses.  The version of these
notes Thompson produced to Trucksess contained significant
redactions of material allegedly protected by the attorney-client
privilege.  Trucksess asked the court to review the unredacted
notes in camera to determine whether the redacted portions in
fact were protected attorney-client communications.  The court
granted Trucksess' motion for in camera inspection and found that
the privilege Thompson asserted was valid.

This matter proceeded to trial in June 2011.  In the
pretrial conference before the first trial day, Trucksess
withdrew his ADEA claim and proceeded solely on his ADA claim.
Mr. Slota, a partner at HRMML, conducted the direct and redirect
examinations of all witnesses called by plaintiff and, with one
exception, the cross-examination of all witnesses called by
defendant.  Mr. Cornish, an HRMML associate, conducted the cross-
examination of police officer Sergeant Townsend of the Upper
Gwynedd Township Police Department.  As noted above, the jury
awarded Trucksess $32,849 in compensatory damages and $30,000 in
punitive damages.

Trucksess filed a "preliminary" motion for attorneys'
fees and costs on August 3, 2011 and an "amended" motion for
attorneys' fees and costs on September 21, 2011.

II.

As a prevailing party on his ADA claim, Trucksess is
entitled to recover reasonable attorneys' fees and costs.  42
U.S.C. § 12205.  There is no dispute in this case concerning his

-3-

eligibility for such fees and costs.  Thompson challenges only the amount of the award to which Trucksess is entitled.

In statutory fee-shifting cases such as this, we apply the "lodestar" method of calculating attorneys' fees, which requires us to multiply the number of hours reasonably expended by a reasonable hourly rate.  Loughner v. Univ. of Pittsburgh, 260 F.3d 173, 177 (3d Cir. 2001).  If the party seeking fees carries his burden "of showing that the claimed rates and number of hours are reasonable, the resulting product is presumed to be the reasonable fee to which counsel is entitled."  Maldonado v. Houstoun, 256 F.3d 181, 184 (3d Cir. 2001).  Nonetheless, the court retains the discretion to modify the lodestar and may adjust it downward if it is unreasonable in light of the results obtained.  Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990).

### A.  Hours Expended

A court calculating the hours reasonably expended in litigation must "review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are 'excessive, redundant, or otherwise unnecessary.'"  Public Int. Research Group of N.J., Inc. v. Windall, 51 F.3d 1179, 1188 (3d Cir. 1995); Maldonado, 256 F.3d at 184.  Our Court of Appeals has stressed that the court has "a positive and affirmative function in the fee fixing process, not merely a passive role." Maldonado, 256 F.3d at 184; Loughner, 260 F.3d at 178.

Furthermore, the party opposing the motion for fees has the burden "to challenge, by affidavit or brief with sufficient specificity to give fee applicants notice, the reasonableness of the requested fee." Rode, 892 F.2d at 1183. We may only reduce the requested fee on grounds raised by the party opposing the fee award, but we exercise our discretion to achieve a reasonable fee in light of any objections raised. Id.

Thompson contends that many of the hours for which Trucksess seeks fees represent unnecessary or duplicative work on the part of his attorneys. In his August 3 preliminary motion for attorneys' fees it is noted that Attorney Slota worked 169.8 hours, Attorney Cornish 179.5 hours, and Paralegal Erario 6.2 hours. In the September 21 amended motion for fees Trucksess avers that Attorney Slota spent on the case 179.6 hours, Attorney Cornish 183.6 hours, HRMML associate attorney Matthew Erlanger 14.7 hours, and Paralegal Erario 7.7 hours. Further, the costs Trucksess seeks increased from $2,012.89 in the preliminary motion to $4,304.95 in the amended motion.

Trucksess explains that the preliminary motion contained only an estimate of hours and costs expended, not a final calculation. In any event, the estimates in the preliminary motion are quite close to the final calculations reported in the amended motion. The detailed billing records show that most of the increase in hours related to work performed after the filing of the preliminary motion. Only 1.0 hour of Attorney Slota's time and 1.5 hours of Paralegal Erario's time

-5-

are not explained by the records of time worked on or after
August 3, 2011.[1]  Accordingly, no adjustments are necessary.

Thompson argues that Trucksess is claiming excessive
amounts of time for certain tasks his attorneys performed in
litigating his case.  Exhibit A to Thompson's opposition numbers
each individual entry on the HRMML billing records that Trucksess
submitted with his fee petition.  Exhibit B to Thompson's
opposition sets forth its position as to the amounts of time
reasonably necessary to accomplish these tasks.

On December 3, 2009, Attorneys Slota and Cornish met
with Trucksess to prepare for a hearing before the PHRC and
billed 90 minutes and 66 minutes, respectively, for this meeting
(entries 15 and 16 on Exhibit A).  In section 1 of Exhibit B,
Thompson suggests the December 3, 2009 meeting with Trucksess
could have been accomplished in 66 minutes.  In section 3 of that
exhibit, Thompson states that 90 minutes was sufficient for that
meeting.  Given Thompson's various views on the subject, we find
that 90 minutes was not an excessive time for this meeting.[2]

---

1.  Thompson notes that the time claimed for Attorney Cornish's
work increased from the preliminary to the amended motion and
that 3.1 of these hours are not explained by the records of the
time Cornish worked after August 3, 2011.  Attorney Cornish
billed 3.1 hours on August 2, 2011, the day before the
preliminary motion for fees was filed.  Thus, the most likely
explanation is that the hours Attorney Cornish billed on August 2
were not included in the estimated number of hours reported in
the preliminary motion filed the next day.

2.  As explained below, Thompson argues it was duplicative to
have two attorneys at this meeting.  We consider that argument
(continued...)

Between March 16, 2010 and April 13, 2010, Attorneys Slota and Cornish billed 8.7 and 16.4 hours, respectively, for time spent preparing for and participating in a private mediation (entries 24 through 31 on Exhibit A).  Nearly all of Attorney Cornish's time was attributable to reviewing the client file and drafting the confidential mediation memorandum.  Attorney Slota revised the memorandum, met with Mr. Trucksess, and attended the mediation.  Attorney Cornish did not attend the mediation. Although Trucksess had been an HRMML client for approximately eight months at the time the memorandum was prepared, it appears likely this memorandum was the first attempt by anyone at the firm to evaluate the case.  Indeed, the records suggest that no one at HRMML had previously undertaken any significant research in connection with this case.  In our view, two full work days spent researching and drafting a mediation memorandum on a case such as this is not unreasonable at its early stage.

On June 11, 2010, Attorney Slota billed 0.2 hours (twelve minutes) reviewing the right to sue letter issued by the EEOC (entry 36 on Exhibit A).  Thompson maintains that this task should have taken only six minutes.  The right to sue letter issued to Trucksess is one page in length.  We do not believe it was unreasonable that Attorney Slota took longer than six minutes to review this important document.  No reduction will be made.

---

2.(...continued)
with other similar challenges below.

Between June 14, 2010 and August 23, 2010, Attorney Cornish billed 4.3 hours for research related to the complaint, drafting the complaint, and incorporating Attorney Slota's revisions to that document.  Attorney Slota billed 2.4 hours for performing research, reviewing the complaint, conferring with Attorney Cornish, and discussing the complaint with Mr. Trucksess.  Mr. Slota also spent 0.2 hours completing "court administrative forms to accompany complaint."  These hours are reported in entries numbered 37 through 47 on Thompson's Exhibit A.  The legal issues in this case were straightforward, and the two counts of the complaint contain mostly boilerplate allegations.  On the other hand, the section of the complaint describing the genesis of Mr. Trucksess' dispute with Thompson was thorough and specific, incorporating many exhibits.  This court recently determined that six hours was a reasonable amount of time for an experienced attorney to spend drafting and communicating with a client regarding an amended complaint that largely repeated allegations made in a related case.  See Mitchell v. City of Phila., No. 99-6306, 2010 WL 1370863, at *10-*11 (E.D. Pa. Apr. 5, 2010).  This court also found that four hours was the time reasonably necessary to draft a complaint asking only for confession of judgment and that three hours was the time reasonably necessary to draft supporting affidavits. Healthco. Int'l, Inc. v. Rosen, No. 90-1357, 1990 WL 82088, at *1 (E.D. Pa. June 11, 1990).  The time HRMML attorneys spent on the complaint in this case is reasonable.  We agree with Thompson,

-8-

however, that completing the civil cover sheet is an administrative task that could be more cheaply accomplished by a paralegal.  Accordingly, we will allow HRMML to recover 0.2 hours of Attorney Slota's time at the paralegal rate.

Between November 24, 2010 and December 1, 2010, Attorneys Cornish and Slota prepared to depose two of Thompson's expected trial witnesses (entries 57, 63, 64, 66, and 67 on Exhibit A).  Attorney Slota spent 2.1 hours preparing for these depositions, which included conferring with Attorney Cornish and researching Thompson's suggestion that Trucksess pay the fees of Thompson's expert witness deposition fee.  Attorney Cornish spent 6.6 hours preparing for the depositions of the two witnesses. Thompson suggests that 3 hours was a reasonable time to prepare because the depositions were short:  one deposition lasted 40 minutes, the other lasted two hours.  A court recently confronted with a similar argument by a fee opponent found that 21 hours of preparation time was reasonable for two depositions lasting a combined five hours.  Donaldson v. Informatica Corp., No. 09-804, 2011 WL 3360200, at *4 (W.D. Pa. Aug. 3, 2011).  In another recent case, this court found reasonable 20.21 hours spent preparing for the de bene esse depositions of two doctors, which lasted a combined 2 hours and 43 minutes.  Hatchett v. Cty. of Phila., 09-1708, 2010 WL 4054285, at *3 (E.D. Pa. Oct. 15, 2010). In that same case, the court approved of 36.2 hours spent preparing for the depositions of three defendants, even though the three depositions were completed in six hours.  Id.  We find

-9-

the time Attorneys Slota and Cornish spent preparing for the depositions of two defense witnesses was reasonable.

In March and April 2011, plaintiff responded to and defeated Thompson's motion for summary judgment (entries 118 through 124 on Exhibit A).  Attorney Slota spent 11.5 hours reviewing and revising the opposition and meeting with Mr. Trucksess, and Attorney Cornish spent 17.9 hours researching and drafting the opposition.  In an employment dispute involving straightforward application of established law, the United States District Court for the Middle District of Pennsylvania found 48 hours was a reasonable time for a sole practitioner to prepare an opposition brief.  Styers v. Pennsylvania, 621 F. Supp. 2d 239, 244-45 (E.D. Pa. 2008).  In a "not particularly complex" Title VII case, the court found that an opposition to a motion for summary judgment could be completed in 25 hours.  Kurschinske v. Meadville Forging Co., No. 06-87, 2008 WL 4462294, at *4 (W.D. Pa. Sept. 30, 2008) (citing Styers).  We accept the 29.4 hours HRMML spent opposing the motion of Thompson for summary judgment.

In May 2011, Attorney Cornish billed 12.3 hours drafting a motion in limine, the pre-trial memorandum, a settlement conference memorandum, and proposed jury instructions.  Attorney Slota spent 1.5 hours reviewing these documents.  Then, in July 2011, Attorney Cornish spent another 2.3 hours drafting a trial memorandum.  This time, a combined 16.1 hours, appears reasonable for these tasks.  We will make no reduction to these

hours (entries 131 through 133, 135 through 138, and 166 on Exhibit A).[3]

In July 2011, Attorney Slota spent 35.4 hours preparing for trial, including drafting his opening and statements, outlining his direct and cross examinations, reviewing deposition transcripts, conducting legal research, and meeting with his client.  Attorney Cornish spent 5.3 hours meeting with Attorney Slota, conducting legal research, and working on a trial memorandum.[4]  Thompson argues that this time is excessive because Attorney Slota reviewed depositions on three different days and prepared exhibits on two different days.  The billing records do not reveal how much time Attorney Slota spent reviewing each

---

3.  Thompson's Exhibit B states that Attorney Slota should have taken only 0.3 hours to review Thompson's trial subpoenas, and not the 0.8 he allegedly billed for that task.  We note that the billing records do not reveal which party issued the trial subpoenas Attorney Slota reviewed.  They may have been subpoenas HRMML was poised to serve.  Regardless, the billing records (entry 151 on Exhibit A) reflect that Attorney Slota actually spent only 0.2 hours on that task.  No reduction is necessary.

4.  The billing entries associated with the tasks Thompson is challenging (numbers 156 through 161 and 170 on Thompson's Exhibit A) show these activities consumed 40.7 hours, not 47.1 hours as stated on Thompson's Exhibit B.  Billing entries numbered 164, 165, 166, 169, 175, and 176 on Thompson's Exhibit A also record 22.3 hours that Attorneys Slota and Cornish spent preparing for trial.  Entry 166 was discussed in the previous paragraph.  Entries 175 and 176 are challenged as duplicative and are discussed below.  Thompson does not challenge entries 164, 165 or 169.  Thus, it appears that plaintiff's attorneys spent 63.0 hours preparing for trial.  Paralegal Erario spent an additional 7.7 hours on trial preparations, for a total time expended by the firm of 70.7 hours.  These hours include only time spent preparing prior to trial and do not include hours Attorneys Slota and Cornish spent on similar activities once trial commenced.

deposition transcript.  His performance at trial, however, demonstrated he was very familiar with their contents and was able to use them effectively.  In Styers, the court found that 64 hours was a reasonable amount of time for an experienced solo practitioner to spend preparing for a trial lasting 14 hours at which seven witnesses were called.  Styers, 621 F. Supp. 2d at 244-45.  We find the hours expended by HRMML in preparation for this trial were reasonable.

Thompson's final objection for excessive billing concerns Trucksess's fee petition (entries 187, 188, 193, 194, 198, 199, and 211 through 227 on Exhibit A).  Between July 21, 2011, the day following trial, and September 19, 2011, Attorneys Slota, Cornish, and Erlanger spent a combined 39.6 hours on the fee petition and attempts at settling the dispute over attorneys' fees.  Thompson challenges 30.2 of those hours as excessive.[5] The fees to which Thompson objects relate only to the preparation of the fee petition and not to settlement efforts.  Here, the various attorneys working on this case spent more time preparing the preliminary and amended petitions for fees than opposing summary judgment.  The descriptions associated with the challenged entries reveal that both Attorneys Cornish and Erlanger performed significant research on this issue, no doubt a result of Attorney Cornish leaving HRMML during the pendency of

---

5.  The individual entries on HRMML's billing records that Thompson is challenging (entries numbered 187-188, 193-194, 198-199, and 211-227) sum to 30.2 hours.  On its Exhibit B, Thompson incorrectly asserts that these entries sum to 34.2 hours.

the fee litigation.  Additional fees were also incurred because of HRMML's decision to file both a preliminary and amended motion for fees.

HRMML has reduced the cost of these filings by having Attorney Erlanger, an associate, prepare the amended fee petition.  Attorney Erlanger spent 14.7 hours doing so.  This suggests that he was aided by the research Attorney Cornish performed before his departure.  Having considered the quality of the fee motions produced and the relatively uncomplicated body of law to be applied, the court will reduce by one-half the time Attorney Cornish spent working on the preliminary fee petition and the time Attorney Slota spent conferring with Attorney Cornish concerning that preliminary petition.  See Mitchell, 2010 WL 1370863, at *13.  This reduces Attorney Cornish's compensable hours by 5.5 hours and Attorney Slota's compensable time by 0.7 hours.

Thompson also challenges a series of entries that it claims demonstrate duplicative work on the part of HRMML attorneys.

As noted above, on December 3, 2009, both Attorneys Slota and Cornish met with Mr. Trucksess to prepare for the PHRC hearing (entries 15 and 16 on Exhibit A).  Attorney Cornish represented Mr. Trucksess at the PHRC hearing.  In light of Attorney Cornish's relative inexperience, it was reasonable to have the preparatory meeting supervised by a more senior attorney, especially if that meant Attorney Slota did not have to

-13-

appear personally at the PHRC hearing.  See Daggett v. Kimmelmann, 811 F.2d 793, 799 n.5 (3d Cir. 1987).

On November 12, Attorney Slota spent 30 minutes reviewing Thompson's answer to the complaint, which was filed via ECF that day (entry 55 on Exhibit A).  Three days later, he spent another 30 minutes reviewing correspondence received from Thompson, the answer, "and objections and disclosures pursuant to rule," presumably referring to initial disclosures (entry 56). Then, on November 24, Attorney Slota spent 1.6 hours, among other things, preparing for depositions and conducting legal research (entry 57).  In the process of this preparation, he again reviewed Thompson's answer to the complaint.  Thus, Attorney Slota read the complaint when it was filed, looked at all correspondence from opposing counsel when it arrived, and referenced the defendant's answer in preparing for depositions. This is not duplicative work as Thompson contends.  Rather, it is the prudent and responsible practice of law.  No reduction to Attorney Slota's time is in order.

On December 1, 2010, HRMML deposed two Thompson employees.  Attorney Cornish spent 5.9 hours taking these depositions, and Attorney Slota expended 3.0 hours attending portions of those depositions (entries 68 and 69 on Exhibit A). Given the relatively short length of the depositions, the narrow compass of the witnesses' testimony, the use of video recording, and the low number of claims in the case, we believe one junior attorney could reasonably conduct these depositions without

-14-

supervision.  In a related context, our Court of Appeals
observed, "In many cases, the attendance of additional counsel
representing the same interests as the lawyers actually
conducting the deposition is wasteful and should not be included
in a request for counsel fees from an adversary." Halderman v.
Pennhurst State Sch. & Hosp., 49 F.3d 939, 943 (3d Cir. 1995);
see Schofield v. Trustees of Univ. of Pa., 919 F. Supp. 821, 828-
29 (E.D. Pa. 1996).  Accordingly, we will disallow the three
hours Attorney Slota spent at these depositions.

        Similarly, we believe that Thompson is correct that two
attorneys did not need to prepare for and appear at the Rule 16
conference held in this case.  Given the relatively uncomplicated
nature of the claims made in this case, one attorney's presence
at the conference would have sufficed. See Herkalo v. Nat'l
Liberty Corp., 94-7660, 1997 WL 539754, *8-*9 (E.D. Pa. Aug. 7,
1997).  Accordingly, we will disallow the 2.9 hours that Attorney
Cornish spent traveling to and attending the Rule 16 conference
on December 21, 2010 (entry 80 on Exhibit A).  The remaining
entries related to the Rule 16 conference do not reflect an
unreasonable duplication of efforts as Thompson argues (entries
77 through 79 and 81).

        In January 2011, both Attorneys Cornish and Slota
reviewed Thompson's responses to discovery requests for
approximately one hour (entries 88 and 89 on Exhibit A).  Because
both attorneys were working on the case, it was reasonable for

both to review their opponent's discovery responses.  No
adjustment is warranted.

During discovery, plaintiff deposed Dr. Carver, a
physician listed on Thompson's initial disclosures (as "Dr.
Carter").  On January 19, 2011, Attorney Cornish prepared a
deposition notice (entry 91), and on January 25, he and Attorney
Slota spent 1.6 and 1.7 hours, respectively, conferencing about
the deposition (entries 94-95).  Attorney Slota spent an
additional 4.5 hours preparing for that deposition the following
day (entry 96), and a further 30 minutes preparing the day before
the deposition (entry 111).  It was not unreasonable for two
attorneys working on the discovery stage of a case, even an
uncomplicated one such as this, to spend less than two hours
conferring about the deposition of a physician.  No reduction is
necessary.

On May 31, 2011, both Attorneys Slota and Cornish
attended a settlement conference with Magistrate Judge Hey.  As
with the Rule 16 conference, we find that one attorney could have
reasonably represented the interests of Mr. Trucksess at the
settlement conference.  Accordingly, we will disallow the 5.0
hours that Attorney Cornish spent traveling to and attending the
settlement conference (entry 143).

On July 14, 2011, the day before trial began, Attorney
Cornish spent 6.9 hours preparing for trial, drafting voir dire,
drafting and researching the trial memorandum, discussing and
strategizing with Attorney Slota, and preparing exhibits.

-16-

Attorney Slota spent 8.4 hours preparing for trial that same day. Unlike Thompson, we see nothing duplicative in two attorneys collaborating to prepare materials for trial.  Work done by Attorney Cornish reduced the hours billed by Attorney Slota, lowering the total cost of HRMML's representation of Mr. Trucksess.  No adjustment is necessary.

Finally, Thompson argues that only one attorney was necessary to represent Mr. Trucksess at trial.  We agree. Attorney Cornish's participation at trial was limited to conducting one cross-examination.  The trial did not involve a large number of witnesses, exhibits, or claims.  Attorney Slota could easily have managed the entire trial without any in-court assistance from Attorney Cornish.  Because his hours expended at trial were unnecessary, we will exclude the hours Attorney Cornish spent attending the trial.  See Blagrave v. Nutrition Mgmt. Servs. Co., No. 05-6790, 2009 WL 440299 at *5 (E.D. Pa. Feb. 20, 2009).  On the first three trial days, Attorney Cornish billed time both for hours spent in court during the trial and for time spent conducting research after the trial.  We will disallow Attorney Cornish's in-court time for these three days, which we estimate was 8 hours per day.  On the fourth trial day, Attorney Cornish billed 3.5 hours, all of which was spent in court.  We reject these 3.5 hours.

Thompson alleges, without citation to the relevant legal standard, that three of HRMML's billing entries are too vague for an award of fees.  Attorneys seeking an award of fees

-17-

must supply the court with sufficiently specific information.
Our Court of Appeals has held:

> [A] fee petition should include some fairly
> definite information as to the hours devoted
> to various general activities, e.g., pretrial
> discovery, settlement negotiations, and the
> hours spent by various classes of attorneys,
> e.g., senior partners, junior partners,
> associates.  However, it is not necessary to
> know the exact number of minutes spent nor
> the precise activity to which each hour was
> devoted nor the specific attainments of each
> attorney.  A fee petition is required to be
> specific enough to allow the district court
> to determine if the hours claimed are
> unreasonable for the work performed.

Rode, 892 F.2d at 1190 (internal quotations and citations
omitted).  Against this standard, the three billing entries
Thompson challenges on Exhibit B (entries 60, 77, and 169) and an
entry challenged in its brief (entry 176) are sufficiently
specific because they provide a fairly definite description of
the work performed and time expended on those tasks.  See E.
Aaron Enter., Inc. v. Carolina Classified.com, No. 10-1087, 2010
WL 2991739, at *3 (E.D. Pa. July 27, 2010).

Thompson also argues that on seven occasions, the
attorneys impermissibly bundled time spent traveling to
Philadelphia from their office in Lansdale, Pennsylvania with the
time spent participating in the event for which they had
traveled.  In its brief, Thompson implies, again without citation
to authority of any kind, that HRMML is only entitled to fifty
percent of its normal fees on time its attorneys spent traveling
to and from litigation events.

-18-

An attorney is permitted to recover fees for time spent traveling if that is the "prevailing practice in the community." Planned Parenthood of Cent. N.J. v. Attorney Gen. of N.J., 297 F.3d 253, 267 (3d Cir. 2002) (quoting Missouri v. Jenkins, 491 U.S. 274, 288 (1989)).  Although this court has occasionally permitted attorneys to recover only fifty percent of their normal fee for travel time, more often it has permitted attorneys to recover their full fee because time spent traveling, particularly while driving, is time during which an attorney cannot perform other valuable work.  Compare Haberern v. Kaupp Vascular Surgeons, Ltd., 855 F. Supp. 95, 100 (E.D. Pa. 1994) with Arietta v. City of Allentown, No. 04-226, 2006 WL 2850571, at *5-*6 (E.D. Pa. Sept. 29, 2006) and Rush v. Scott Specialty Gases, Inc., 934 F. Supp. 152, 156 (E.D. Pa. 1996) and Imprisoned Citizens Union v. Shapp, 473 F. Supp. 1017, 1022 (E.D. Pa. 1979).  The list of costs submitted with the fee petition contain numerous entries for parking, indicating that HRMML attorneys drove into Philadelphia for the events in this case.  Accordingly, no adjustment is warranted.

Finally, Thompson argues that the time HRMML incurred on the two motions to compel filed by Trucksess is noncompensable because that work is unrelated to the resolution of this case in plaintiff's favor.  As stated above, Trucksess moved to compel Thompson to produce Mr. Thompson for a deposition and also to compel Thompson to produce for in camera review certain documents to which Thompson asserted the attorney-client privilege.

-19-

Trucksess filed his motion to depose Mr. Thompson only two weeks after Thompson filed its answer in this case. In the supporting memorandum, plaintiff stated he desired to take this deposition to ask Mr. Thompson questions about "the policies, procedures, and culture" at Thompson BMW. Nothing in the complaint, answer, or initial disclosures from Thompson suggested Mr. Thompson had personal knowledge of facts concerning Trucksess's employment or the company's employment practices. In his motion, Trucksess gave no reason why information about these "policies, procedures, and culture" could not be obtained from someone in Thompson's human resources department. We will not include the hours spent on this meritless motion. See Smith v. Int'l Servs., Inc., No. 95-2038, 1997 WL 667872, at *7 (E.D. Pa. Oct. 9, 1997). Thus, we exclude one hour of Attorney Slota's time and 3.2 hours of Attorney Cornish's time (entries 61, 62, and 65 on Exhibit A).[6]

Conversely, the hours expended by HRMML in pursuing the motion to compel in camera review and production of documents was reasonable. Thompson's initial disclosures stated that the company may rely on the non-privileged portions of handwritten notes taken by its human resources director to support its claims and defenses. Thompson produced only the portions of those notes that were not privileged in its view. The motion to compel asked the court to inspect those records and verify that the unproduced

---

6. The hours reflected in these three challenged entries sum to 4.2 hours, not 4.4 hours as stated in Thompson's Exhibit B.

notes were protected by the attorney-client privilege and to order Thompson to produce any non-privileged notes.  The court reviewed the portions of documents as to which Thompson asserted the attorney-client privilege and found these privilege claims to be proper.  Because Thompson properly asserted the attorney-client privilege, we will not require it to bear the cost of plaintiff's unsuccessful challenge to its privilege claims.  Accordingly, we will disallow time spent researching, preparing, and arguing this motion and will reduce Attorney Cornish's time by 4.4 hours and Attorney Slota's time by 0.2 hours (entries 99, 101-04, and 110).

Thompson's final challenge to the hours expended seeks a five percent reduction in the total remaining number of hours to account for the fact that Trucksess abandoned his ADEA claim on the eve of trial.  We must initially determine whether Trucksess' abandoned ADEA claim and his successful ADA claim derive from a common core of facts such that he is entitled to recover for a portion of the time spent litigating his abandoned ADEA claim.  See Loughner, 260 F.3d at 179.  In Hensley v. Eckerhart, the Supreme Court explained:

> In other cases the plaintiff's claims for
> relief will involve a common core of facts or
> will be based on related legal theories.
> Much of counsel's time will be devoted
> generally to the litigation as a whole,
> making it difficult to divide the hours
> expended on a claim-by-claim basis.  Such a
> lawsuit cannot be viewed as a series of
> discrete claims.  Instead the district court
> should focus on the significance of the
> overall relief obtained by the plaintiff in

> relation to the hours reasonably expended on
> the litigation.

461 U.S. at 435.

The plaintiffs in <u>Hensley</u> brought suit on behalf of persons involuntarily confined at a state hospital.  Following a three-week trial, the district court found numerous constitutional violations at the institution.  For instance, the court determined that certain physical aspects of the facility were not minimally adequate and that the visitation and telephone policies were so restrictive that they constituted punishment.  However, the court rejected the plaintiffs' claim that the staffing of the facility was unconstitutional.  <u>Id.</u> at 428.  The district court reasoned that the fees for hours billed to both the successful and unsuccessful claims were compensable because the issues were so interrelated.  The Supreme Court held that the district court did not err in refusing to apportion "the fee award mechanically on the basis of respondents' success or failure on particular issues."  <u>Id.</u> at 438.

This case presents an identical situation.  Both of Trucksess' employment law claims arose from a common set of facts.  Even had Trucksess proceeded on his ADEA claim at trial, the presentation of evidence would have been nearly identical with little or nothing added.  Under <u>Hensley</u>, no reduction of the remaining hours is appropriate.  <u>Id.</u>; <u>see</u> <u>Blagrave v. Nutrition Mgmt. Servs. Co.</u>, No. 05-6790, 2009 WL 440299 at *3 (E.D. Pa. Feb. 20, 2009).

-22-

##### B.  Reasonable Hourly Rates

Attorney Slota is seeking compensation for his time on this case at a rate of $475 per hour.  HRMML is seeking a rate of $225 per hour for Attorney Cornish's time and $190 per hour for Attorney Erlanger's time.  Finally, the firm seeks $115 per hour for the time Paralegal Erario expended on this case.

In calculating the lodestar, we are required to use a reasonable hourly rate for all legal professionals.  Our Court of Appeals has advised that a "reasonable hourly rate is calculated according to the prevailing market rate in the relevant community."  Maldonado, 256 F.3d at 184.  We must "assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  Id. (citing Dellarciprete, 892 F.2d at 1183).  The party seeking fees "bears the burden of establishing by way of satisfactory evidence, in addition to [the] attorney's own affidavits,... that the requested hourly rates meet this standard."  Id. (citing Washington v. Phila. Cty. Ct. of Common Pleas, 89 F.3d 1031, 1035 (3d Cir. 1996)) (internal quotation omitted); Evans v. Port Auth. of N.Y. & N.J., 273 F.3d 346, 361 (3d Cir. 2001).

The best evidence of the reasonable rate for an attorney's time is the customary billing rate for clients.  Id. at 184-85.  None of the attorneys here has introduced evidence of

the rate they typically charge clients.  Where an attorney does
not have a customary billing rate, we may consider:

> "(1) affidavits of counsel with similar
> experience as to what they would charge for a
> similar case; (2) bar surveys of customary
> rates; (3) the amount charged by counsel for
> the opposition in the particular case or
> similar litigation; (4) the amounts awarded
> counsel with similar experience in similar
> litigation; and (5) the amounts awarded for
> the services of counsel in prior litigation."

Mitchell, 2010 WL 1370863, at *14 (quoting 10 JAMES WM. MOORE ET
AL., MOORE'S FEDERAL PRACTICE ¶ 54.190 (3d ed. 2009)).

Once the plaintiff makes a prima facie case for the
requested hourly rate, the fee opponent must present "appropriate
record evidence" to contest that rate.  Smith v. Phila. Housing
Auth., 107 F.3d 223, 225 (3d Cir. 1997).  If the fee opponent
fails to present such evidence, the fee movant receives the
requested fee.  Id.  If the fee opponent does present
"appropriate record evidence," the court must hold a hearing "to
determine the reasonable market rates."  Id.

In support of its requested rates, HRMML submitted the
affidavit of Mark A. Kearney, a shareholder in the law firm of
Elliott, Greenleaf & Siedzikowski, P.C., in Blue Bell,
Pennsylvania.  Attorney Kearney attests to the reasonableness of
the rates HRMML has requested for its three attorneys and its
paralegal in light of the experience of each of those
individuals.  The Kearney affidavit is prima facie evidence that
the rates HRMML is requesting are the prevailing market rates for
these attorneys.

In opposing this fee award, Thompson has introduced a declaration that Attorney Alan B. Epstein submitted in a different action before this court attesting to the reasonableness of the fee charged by Attorney Craig Thor Kimmel. Neither Attorney Epstein nor Attorney Kimmel was involved in this litigation.  In his declaration, Attorney Epstein asserts that his hourly rate is $475.  Thompson argues that because Attorney Epstein has greater experience in employment litigation than does Attorney Slota, Attorney Slota should not be compensated at the same rate as Attorney Epstein.  Thompson also argues that the HRMML attorneys should be compensated in accordance with the rates charged by Community Legal Services ("CLS"), a Philadelphia-based legal services provider for low-income individuals.

Thompson has failed to carry its burden in contesting the hourly rates requested by HRMML.  The Epstein declaration in no way contradicts the Kearney affidavit.  Attorney Epstein did not address in his declaration the reasonable hourly rates for the time of Attorneys Slota, Cornish, or Erlanger or Paralegal Erario.  His views on the appropriate hourly rate for his own time or the time of Attorney Kimmel are irrelevant to the matter before us.

We acknowledge that this court and our Court of Appeals have relied, on occasion, on the CLS fee schedule to fashion an appropriate hourly rate in fee-shifting cases.  See, e.g., Maldonado, 256 F.3d at 187-88.  Typically, this has occurred only

-25-

in cases in which the attorney was associated with CLS or the fee
movant failed to introduce competent evidence of a reasonable
hourly rate.  Id.; Mary Courtney T. v. Sch. Dist. of Phila., No.
06-2278, 2009 WL 185426, at *3 (E.D. Pa. Jan. 22, 2009); Damien
J. v. Sch. Dist. of Phila., No. 06-3866, 2008 WL 1815302, at *2
n.7, (E.D. Pa. Apr. 22, 2008) (gathering cases); Tucker v. Phila.
Housing Auth., No. 05-56, 2005 WL 1607402, at *1-*2 (E.D. Pa.
July 7, 2005).  The generalized CLS fee schedule is not
sufficient to rebut the sworn testimony by Attorney Kearney
specifically attesting to the reasonable hourly rates for
Attorneys Slota, Cornish, and Erlanger and Paralegal Erario.  The
"appropriate record evidence" that a fee opponent must present to
warrant a hearing on the reasonableness of the requested hourly
rate must "contest[] the accuracy" of the fee movant's evidence
or offer an alternative opinion on the reasonable rate for the
time of the fee movant—not some other attorney.  Blagrave, 2009
WL 440299, at *7.

### C. Lodestar Calculation

We set forth below the hours each lawyer and paralegal
billed as presented in Trucksess' motion, and beside that number,
the hours we are disallowing in accordance with our
determinations above.  We then state the number of compensable
hours each individual at HRMML worked:

```
Attorney Slota:     179.6 hours (-5.1 hours)   = 174.5 hours

Attorney Cornish:   183.6 hours (-48.5 hours)  = 135.1 hours

Attorney Erlanger:  14.7 hours                 =  14.7 hours
```

-26-

Paralegal Erario:   7.7 hours (+0.2 hours[7])   =   7.9 hours

We now multiply the compensable time each individual worked by the reasonable hourly rate to compute the lodestar:

Attorney Slota:      174.5 hours x $475/hour  = $ 82,887.50

Attorney Cornish:    135.1 hours x $225/hour  = $ 30,397.50

Attorney Erlanger:   14.7 hours x $190/hour   = $  2,793.00

Paralegal Erario:    7.9 hours x $115/hour    = $    908.50

Total:                                          $116,986.50

Plaintiff has not requested any increase to the lodestar in accordance with the factors set forth in Johnson v. Georgia Highway Express, Inc., 498 F.2d 714 (5th Cir. 1974).  See Hensley, 461 U.S. at 434 n.9.  Thus, we find that plaintiff is entitled to an award of attorneys' fees in the amount of $116,986.50.

### D. Costs

Trucksess requested $4,304.95 in costs associated with this action.  Thompson only challenges the costs associated with having two attorneys attend the various events discussed above. We will disallow the parking and travel costs incurred by Attorney Cornish attending the Rule 16 conference, the settlement conference, and trial.  These charges total $216.48.  Thus,

---

7.  As noted in Section II.A.1 above, Attorney Slota billed 0.2 hours for completing the civil cover sheet to accompany the complaint.  We determined HRMML is entitled to compensation at the paralegal's rate for this work.  To simplify our computations, we have deducted 0.2 hours from Attorney Slota's time and added 0.2 hours to the time worked by Paralegal Erario.

Trucksess is entitled to an award of costs in the amount of $4,088.47.